

FILED by ____ D.C.
ELECTRONIC

**February 16, 2010**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BROWARD DIVISION

CASE NO.: **10-CV-60221-Lenard/Turnoff**

AMERISURE MUTUAL INSURANCE
COMPANY,

       Plaintiff,

v.

GULF/ARISTEO, A Joint Venture,

       Defendant.

_____/

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Amerisure Mutual Insurance Company ("Amerisure"), sues Defendant, GULF/ARISTEO, A Joint Venture, for declaratory relief and alleges as follows:

### PARTIES

1.    Amerisure is incorporated under the laws of Michigan, has its principal place of business in the State of Michigan and is licensed to transact business in the State of Florida.

2.    Defendant Gulf/Aristeo is a Florida joint venture authorized to and doing business in Broward County, Florida, with its principal place of business at 633 S. Federal Highway, 5th Floor, Fort Lauderdale, Florida 33301.

3.    Gulf/Aristeo was the general contractor of a construction job located at the 10800 block of Miramar Boulevard in Broward County, Florida ("Construction Site") on or about June 25, 2007.

## JURISDICTION AND VENUE

4.      This court has subject matter jurisdiction pursuant to 28 U.S.C.S. § 1332 because the parties are in complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs.  Further, this action is based on 28 U.S.C.S. § 2201.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c) for the reasons that Amerisure entered into a contract of insurance in this district and the underlying action was venued in this district.

## GENERAL ALLEGATIONS

6.      On June 25, 2007, Aaron West sustained fatal injuries when he purportedly was ordered to operate a back hoe by his employer at the Construction Site and the backhoe became unstable on a steep slope and fell into a man made lake.

7.      Thereafter, Deanne West, as personal representative of the Estate of Aaron West, for the benefit of Deanne West, surviving spouse, Aaron West, Jr., surviving minor son, Aquinas West, surviving minor daughter, and the Estate of Aaron West, filed suit against W. Jackson & Sons, a Florida corporation, and Gulf Building Corporation, a Florida corporation under a case captioned *Deanne West, as personal representative of the Estate of Aaron West, for the benefit of Deanne West, surviving spouse, Aaron West, Jr., surviving minor son, Aquinas West, surviving minor daughter, and the Estate of Aaron West, v. W. Jackson & Sons, a Florida corporation, and Gulf Building Corporation, a Florida corporation*, in Broward County, Florida under case number 09-35371 ("Underlying Action").  A copy of the Complaint is attached as Exhibit "A."

8.      The Complaint in the Underlying Action does not name Gulf/Aristeo as a Defendant but instead names Gulf Building Corporation ("Gulf").

2

9.     Amerisure provided a commercial general liability policy to Gulf/Aristeo for the policy period effective March 1, 2007 to March 1, 2008 with policy limits of 1,000,000 per occurrence, under policy number 2043449000000 ("Insurance Policy"), a copy of which is attached as Exhibit "B."

10.    The Amerisure Insurance Policy provides, in pertinent part:

> **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

11.    Since there is no allegation made against Gulf, Amerisure has no obligation to provide coverage under the terms of the insurance policy.

## <u>COUNT I - DECLARATORY RELIEF</u>

12.    Amerisure and the Defendants are in dispute as to Amerisure's rights, obligations and duties, if any, owed to Gulf/Aristeo pursuant to the stated terms and conditions of the Insurance Policy and is in need of a judicial declaration regarding same.

13.    Amerisure seeks the Court's intervention to make the following findings:

**a.** There is no coverage for Gulf/Aristeo arising out of or in connection with the Underlying Action because there is no claim made against Gulf/Aristeo in the Underlying Action;

**b.** Amerisure has no obligation to defend Gulf/Aristeo in the Underlying Action;

**c.** Amerisure has no obligation to indemnify Gulf/Aristeo in the Underlying Action;

14.    Amerisure has complied with all conditions precedent to the filing of this lawsuit.

WHEREFORE, Amerisure prays this Court declare as follows:

**a.** That this Court has jurisdiction over this matter;

3

**b.** That this Court has jurisdiction over the parties in this matter;

**c.** That Amerisure did not owe a duty to defend Gulf/Aristeo under the terms, conditions and exclusions of the Insurance Policy;

**d.** That Amerisure does not owe a duty to indemnify Gulf/Aristeo under the terms, conditions and exclusions of the Insurance Policy; and

**e.** Such other relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Amerisure demands a trial by Jury on all issues so triable as a matter of law.

Respectfully submitted,

By: _____

JOHN BOND ATKINSON
Florida Bar No. 0290270
E-mail:  jatkinson@atkinsonbrownell.com
KRYSTINA N. JIRON
Florida Bar No.  915491
E-mail: knjiron@atkinsonbrownell.com
Atkinson & Brownell, P.A.
One Biscayne Tower, Suite 3750
2 South Biscayne Boulevard
Miami, Florida 33131
Tel.: 305-376-8840
Fax.: 305-376-8841
*Counsel for Plaintiff*

4

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE 17TH — rendered as:

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR BROWARD
COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NUMBER:

DEANNE WEST, as Personal
Representative of the ESTATE OF
AARON WEST, Deceased,
for the benefit of DEANNE WEST,
surviving spouse, AARON WEST, JR.
surviving minor son, AQUINAS WEST,
surviving minor daughter and the ESTATE
OF AARON WEST, Deceased,

09 03 5371

21

     Plaintiffs,

vs.

W. JACKSON & SONS CONSTRUCTION
COMPANY, a Florida corporation,
and GULF BUILDING CORPORATION,
a Florida corporation

     Defendant.

A TRUE COPY

JUN 25 2009

## COMPLAINT

     Plaintiffs, DEANNE WEST, as Personal Representative of the ESTATE of AARON

WEST, deceased, for the benefit of DEANNE WEST, surviving spouse, AARON WEST, JR.,

surviving minor son, AQUINAS WEST, surviving minor daughter, and the ESTATE AARON

WEST, deceased, sues Defendants, W. JACKSON & SONS CONSTRUCTION COMPANY, a

Florida corporation, and GULF BUILDING CORPORATION, a Florida corporation, and alleges

as follows:

     1.    This is an action for damages that exceed the minimum jurisdictional limits of

this Court.

– 1 –

· Case 0:10-cv-60221-JAL   Document 1   Entered on FLSD Docket 02/16/2010   Page 7 of 65

FastFax Message# 0191301 901                    From: 954 941 2006                    08/04/2009 14:17:31 Page 4 of 46
·  AUG-04-2009 13:57    From:954 941 2006                                              Page:4/46

2.      At all times material hereto, Plaintiff DEANNE WEST has, or will be, duly appointed Personal Representative of the ESTATE of AARON WEST, deceased (hereinafter referred to as the "ESTATE,") and is the proper party to bring this action.

3.      At all times material hereto, Plaintiff DEANNE WEST, was and is the surviving spouse of AARON WEST, Deceased.

4.      At all times material hereto, Plaintiff AARON WEST, JR., was and is the surviving minor son of AARON WEST, Deceased.

5.      At all times material hereto, Plaintiff AQUINAS WEST, was and is the surviving minor daughter of AARON WEST, Deceased.

6.      Defendant, W. JACKSON & SONS CONSTRUCTION COMPANY (hereinafter referred to as "JACKSON,") is a Florida corporation authorized to and doing business in Broward County, Florida with a principal place of business at 1888 NW 21st Street, Pompano Beach, FL 33069.    Defendant JACKSON held itself out as a qualified and competent provider of construction services including land excavation, lake excavation, site clearing and grading.

7.      Defendant, GULF BUILDING CORPORATION (hereinafter referred to as "GULF,") is a Florida corporation authorized to and doing business in Broward County, Florida with a principal place of business at 633 S. Federal Highway, 5th Floor, Fort Lauderdale, FL, 33301. Defendant GULF held itself out as a qualified and experienced General Contractor using only the most qualified sub-contractors to complete any type of construction project.

8.      On or about June 25, 2007, Defendant, GULF, was the general contractor of a construction job located at the 10800 block of Miramar Blvd, in Broward County, Florida. In connection with the construction work at this location, the Defendant, GULF, was required to move and excavate earth to create a man made lake.

-2-

· Case 0:10-cv-60221-JAL   Document 1   Entered on FLSD Docket 02/16/2010   Page 8 of 65

FastFax Message# 0191301.901                    From: 954 941 2006                                08/04/2009  14:17:31  Page 5 of 46
~  AUG-04-2009 13:57   From:954 941 2006                                                          Page:5/46

9.      On or about June 25, 2007, Defendant, JACKSON, was hired, contracted or employed by Defendant, GULF, to perform the work associated with the earth excavation and creation of a man made lake at the construction site located in the 10800 block of Miramar Blvd, in Broward County, Florida.

10.     On or about June 25, 2007, Aaron West, deceased, was an employee of Defendant, JACKSON, and was ordered to operate a John Deere back hoe to move, excavate and dig earth in the creation of the man made lake at the construction site referenced above.

11.     The excavation work that was being performed at the construction site listed above and the use of the John Deere back hoe to accomplish that work is ultra-hazardous and inherently dangerous.

12.     On or about June 25, 2007 the back hoe that Aaron West, deceased, was ordered to operate by his employer became unstable on a steep slope or grade, tipped over and fell into the lake that was being created. As a result, Aaron West, deceased, drowned and the Estate and survivors have suffered damages as more fully set forth below.

### COUNT I – CLAIMS AGAINST JACKSON

13.     Plaintiff adopts and incorporates all of the allegations contained in Paragraph 1 through 12 and further alleges as follows:

14.     On or before June 25, 2007, Defendant JACKSON hired Aaron West, deceased, as a construction worker and not as a heavy machine operator.

15.     At no time prior to Aaron West, deceased, employment with Defendant JACKSON had he received any training in the operation of heavy construction equipment, including, but not limited to, the operation of a John Deere back hoe.

– 3 –

FastFax Message# 0191301 901                    From: 954 941 2006                              08/04/2009 14:17:31 Page 6 of 46
AUG-04-2009 13:57     From:954 941 2006                                               Page:6/46

16. Defendant, JACKSON, knew, at the time that Aaron West, deceased, was hired that he did not possess the proper training or licensing to operate heavy construction equipment like the John Deere back hoe in question or perform earth excavation at/or near the edge of a man made lake.

17. At no time prior to Aaron West's, deceased, death was he trained or certified by Defendant JACKSON or anyone else in the ultra-hazardous and inherently dangerous activity of excavating land and/or operating heavy construction equipment like the John Deere back hoe in question.

18. On or about June 25, 2007, Defendant, JACKSON, through its employees and/or supervisors knew that the decedent, Aaron West, was unable to swim.

19. On or about June 25, 2007, Defendant, JACKSON, possessed, controlled and had the right to control the work being performed at the construction site identified above.

20. On or about June 25, 2007, Defendant, Jackson, through its employees and/or supervisors ordered the decedent, Aaron West, to operate the John Deere back hoe on an unsafe grade/slope near a body of deep water with full knowledge of the absence of his training, education, cortification and basic understanding of the operation of the heavy machinery.

21. Defendant, JACKSON, knew or should have known that the lack of training, experience, licensing and certification of decedent Aaron West was virtually certain to result in his injury or death.

22. In addition to the aforementioned failures, Defendant, JACKSON, failed to:

    a) prepare and maintain an adequate written safety program;

– 4 –

FastFax Message# 0191301.901                    From: 954 941 2006                              08/04/2009 14:17:31 Page 7 of 46
AUG-04-2009 13:57    From:954 941 2006                                                              Page:7/46

b)    perform a site hazard assessment at the location of the construction site

before ordering the decedent to work in the unsafe conditions without proper

training, and/or;

c)    conduct adequate and reasonable safety meetings.

23.    At the time that decedent Aaron West was ordered to perform the excavation

work as set forth above the Defendant, JACKSON, had actual or constructive knowledge that

the location the decedent would be operating the John Deere back hoe in was unsafe and

unstable.

24.    On or before June 25, 2007, Defendant, JACKSON, intentionally or willfully

withheld from the decedent, Aaron West, the fact that he should be trained, licensed or

certified before undertaking to operate heavy machinery on soft sloping soil near a body of

water.

25.    On June 25, 2007, Defendant, JACKSON, through its employees or supervisors

intentionally or willfully withheld the fact that the location that the decedent was to perform the

work using the John Deere back hoe was dangerous due to the sloping earth near a man

made lake.

26.    Defendant JACKSON engaged in conduct that it knew, based on prior explicit

warnings specifically identifying a known danger, was virtually certain to result in injury or

death to its employee, Aaron West, because:

a)    decedent Aaron West had warned JACKSON of the unsafe soil

conditions he was working in and JACKSON disregarded the possibility of any

harm resulting from such conditions; and/or

-- 5 --

Case 0:10-cv-60221-JAL   Document 1   Entered on FLSD Docket 02/16/2010   Page 11 of 65

FastFax Message# 0191301.901                    From: 954 941 2006                    08/04/2009 14:17:31 Page 8 of 46
AUG-04-2009 13:57    From:954 941 2006                                                  Page:8/46

b)     JACKSON failed to address the hazards associated with excavating near a lake or the use of heavy equipment such as a back hoe near the water; and/or

c)     JACKSON had direct knowledge of the dangerous condition and intentionally and willfully assigned decedent Aaron West to perform the work which led to his death.

27.     As a result of the aforementioned intentional conduct of Defendant JACKSON, said Defendant received multiple citations from OSHA regarding its conduct which led to the death of Aaron West, including, but not limited to the following:

a)     Citation 1, Item 1 (Type of Violation: **Serious**) which stated, "On or about 6/25/07 at 10800 Miramar Boulevard, Miramar, Florida, deficiencies in the site safety and health program were identified to include hazard prevention and control, worksite analysis and safety and health training," in direct violation of 29 CFR 1926.20(b)(1), which required a safety program to be initiated and/or maintained to provide compliance with the general safety and health provisions of the standard.

b)     Citation 1, Item 2 (Type of Violation: **Serious**) which stated, "On or about 6/25/07 an employee was exposed to a drowning hazard while operating a John Deere 330LC hydraulic excavator on unstable soil at the edge of a lake," in direct violation of 29 CFR 1926.602(a)(3)(i), which states that it is a violation when an employer moves or causes to move construction equipment or vehicles upon access roadways or grades that are not constructed and maintained to accommodate safely the movement of the equipment and vehicles involved.

28.     At all times material hereto, Defendant, JACKSON, intentionally or willfully

– 6 –

Case 0:10-cv-60221-JAL  Document 1  Entered on FLSD Docket 02/16/2010  Page 12 of 65

FastFax Message# 0191301 901                    From: 954 941 2006                                          08/04/2009 14:17:31 Page 9 of 46
AUG-04-2009 13:58    From:954 941 2006                                                                       Page:9/46

carried out the aforementioned hazardous work without requiring the appropriate license,

permits, education or training.

29.    Defendant, JACKSON, intentionally acted as described above, in direct

contravention of state and federal laws and regulations, with actual knowledge of the

inherently dangerous and ultra-hazardous nature of the activity which it ordered decedent

Aaron West to carry out, resulting in the virtual certainty of injury or death to decedent, Aaron

West, as best proved by his demise.

30.    As a direct and proximate result of the foregoing, decedent, Aaron West

drowned on June 25, 2007 and the Estate and Survivors have suffered the following

damages:

   a)   DEANNE WEST as surviving spouse has suffered the loss of the decedent's
        companionship and protection, and her mental pain and suffering in the past
        and future as a result of the decedent's injury and death.

   b)   AARON WEST, JR., as surviving minor son, and AQUINAS WEST as surviving
        minor daughter have suffered the loss of parental companionship, instruction
        and guidance, and their mental pain and suffering as a result of the decedent's
        injury and death both in the past and future

   c)   DEANNE WEST as surviving spouse, AARON WEST, JR., as surviving minor
        son, and AQUINAS WEST as surviving minor daughter have suffered the loss
        of the decedent's support and services;

   d)   THE ESTATE OF AARON WEST has incurred funeral expenses;

   e)   The ESTATE OF AARON WEST has incurred medical expenses incurred as a
        result of the decedent's death; and

   f)   The Estate of AARON WEST has lost its net accumulations.

WHEREFORE, Plaintiffs, DEANNE WEST, as Personal Representative of the ESTATE

of AARON WEST, deceased, for the benefit of DEANNE WEST, surviving spouse, AARON

WEST, JR., surviving minor son, AQUINAS WEST, surviving minor daughter, and the

ESTATE AARON WEST, deceased, sue the Defendant, W. JACKSON & SONS

– 7 –

Case 0:10-cv-60221-JAL   Document 1   Entered on FLSD Docket 02/16/2010   Page 13 of 65

FastFax Message# 0191301.901                    From: 954 941 2006                                     08/04/2009 14:17:31 Page 10 of 46
AUG-04-2009 13:58    From:954 941 2006                                                                  Page:10/46

CONSTRUCTION COMPANY, a Florida corporation, for compensatory damages together with interest and costs and any other and further relief this Court deems appropriate and demand trial by jury of all issues triable as of right by a jury.

### COUNT II – CLAIM AGAINST GULF – NON DELEGABLE DUTY

31.    Plaintiff adopts and incorporates all of the all allegations contained in Paragraphs 1 through 30 and further alleges as follows:

32.    As noted above, by contract as the general contractor of the job, as well as operation of law, Defendant, GULF, assumed and possessed a non-delegable duty to assure that all work pertaining to the excavation, land clearing, grading and lake excavation at the subject construction site were performed in accordance with all state, federal, and applicable industry standards, in a safe manner, and that all such individuals engaged therein were properly trained, educated, experienced, certified, and equipped.

33.    Defendant, GULF, breached its non-delegable duty in light of the fact that neither Defendant, JACKSON, nor decedent Aaron West were educated, trained, experienced, certified, and/or equipped to safely carry out the subject inherently dangerous and ultra-hazardous activity and work, in direct violation of state, federal, and applicable industry standards, rules, and regulations.

34.    As a result of Defendant, GULF's, breach of its non-delegable duties, decedent herein, Aaron West, fell to his death and drowned and The Estate and the Survivors have suffered those injuries and damages more specifically set forth in paragraph 30 above.

WHEREFORE, Plaintiffs, DEANNE WEST, as Personal Representative of the ESTATE of AARON WEST, deceased, for the benefit of DEANNE WEST, surviving spouse, AARON WEST, surviving minor son, AQUINAS WEST, surviving minor daughter, and the ESTATE AARON WEST, deceased, sue the Defendant, GULF BUILDING CORPORATION, a Florida

– 8 –

Case 0:10-cv-60221-JAL   Document 1   Entered on FLSD Docket 02/16/2010   Page 14 of 65

FastFax Message# 0191301 901                     From: 954 941 2006                              08/04/2009 14 17 31 Page 11 of 46
AUG 04 2009 13:58   From:954 941 2006                                                            Page:11/46

ultra-hazardous and inherently dangerous work that ultimately led to his death.

46.    As a result of the aforementioned acts and/or omissions of the Defendant, GULF, Aaron West was killed and the Estate and Survivors herein have suffered those damages more specifically set forth in paragraph 30 above.

WHEREFORE, Plaintiffs, DEANNE WEST, as Personal Representative of the ESTATE of AARON WEST, deceased, for the benefit of DEANNE WEST, surviving spouse, AARON WEST, JR., surviving minor son, AQUINAS WEST, surviving minor daughter, and the ESTATE AARON WEST, deceased, sue the Defendant, GULF BUILDING CORPORATION, a Florida corporation , for compensatory damages together with interest and costs and any other and further relief this Court deems appropriate and demand trial by jury of all issues triable as of right by a jury.

DATED:  6-25-09

> McCULLOUGH & LEBOFF, P.A.
> Attorneys for Plaintiff
> 2901 Stirling Road #207
> Ft. Lauderdale, Fl 33312
> Tel (954) 989-3435 Broward
> Tel (305) 461-2500 Dade
> Fax (954) 989-3432
>
> By: _____
>      Scott T. McCullough
>      Florida Bar No. 0065500

– 11 –

# EXHIBIT "B"

# COMMON POLICY DECLARATIONS

## AMERISURE MUTUAL INSURANCE COMPANY

SERVICE OFFICES:

FIRST YEAR:              2007

**POLICY NUMBER:**        GL 2043449000000
GROUP NUMBER :
ACCOUNT NUMBER: 20028665

**PREMIUM AMOUNT DUE:** $    47,643.56

RENEWAL OF:

**NAMED INSURED:** GULF/ARISTEO, JOINT VENTURE

PRODUCER NUMBER:  826368 – 150
PRODUCER NAME AND ADDRESS:
BATEMAN GORDON & SANDS INC

**MAILING ADDRESS:**
C/O GULF BUILDING CORPORATION
600 CORPORATE CENTER DRIVE
FT. LAUDERDALE          FL 33334

P O BOX 1270

POMPANO BEACH          FL  33061

**POLICY PERIOD:** FROM 03/01/2007 TO 03/01/2008      AT 12:01 A.M. STANDARD TIME
AT YOUR MAILING ADDRESS SHOWN ABOVE.  DATE ISSUED:  03/21/2007

NAMED INSURED'S BUSINESS:  GENERAL CONTRACTOR
FORM OF BUSINESS:    CORPORATION
AUDIT PERIOD:     ANNUAL

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THE
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A
PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | | PREMIUM |
|---|---|---|
| BOILER AND MACHINERY COVERAGE PART | $ | 0.00 |
| COMMERCIAL AUTO COVERAGE PART | $ | 0.00 |
| COMMERCIAL CRIME COVERAGE PART | $ | 0.00 |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ | ▮▮▮▮ |
| COMMERCIAL INLAND MARINE COVERAGE PART | $ | 0.00 |
| COMMERCIAL PROPERTY COVERAGE PART | $ | 0.00 |
| STATE TAX | $ | |
| MUNICIPAL SURCHARGE | $ | |
| NEW YORK FIRE FEE | $ | |
| FLORIDA - CITIZENS PROPERTY INSURANCE SURCHARGE 2004 | $ | |
| FL HURRICANE CATASTROPHE FUND EMERGENCY ASSESSMENT | $ | ▮▮▮▮ |
| FL INSURANCE GUARANTY ASSOCIATION ASSESSMENT 2006 | $ | ▮▮▮▮ |
| TOTAL | $ | ▮▮▮▮ |

FORMS APPLICABLE TO ALL COVERAGE PARTS:

"THIS IS A TRUE AND EXACT
DUPLICATE OF THE ORIGINAL"

COUNTERSIGNED _____ (DATE)     BY _____ (AUTHORIZED REPRESENTATIVE)

0200 29332700

**Amerisure**
COMPANIES



COMMERCIAL GENERAL LIABILITY COVERAGE PART
DECLARATIONS PAGE

**POLICY NUMBER:** GL 2043449000000      **EFFECTIVE DATE:** 03/01/2007

## NAMED INSURED

GULF/ARISTEO, JOINT VENTURE

## LIMITS OF INSURANCE

| | |
|---|---|
| GENERAL AGGREGATE LIMIT | 2,000,000 |
| (OTHER THAN PRODUCTS–COMPLETED OPERATIONS) | |
| PRODUCTS–COMPLETED OPERATIONS AGGREGATE LIMIT | 2,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | 1,000,000 |
| EACH OCCURRENCE LIMIT | 1,000,000 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | 50,000 |
| MEDICAL EXPENSE LIMIT | 5,000 ANY ONE PERSON |

## LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY

FOR DESCRIPTIONS OF THE INSURED PREMISES, PLEASE REFER TO THE ATTACHED SCHEDULES.

## CLASSIFICATIONS

ALL APPLICABLE CLASSIFICATIONS MAY BE FOUND IN THE ATTACHED SCHEDULES.

## FORMS APPLICABLE

| | | | |
|---|---|---|---|
| AN 12 20 04 06 | CG 21 70 11 02 | CG 22 34 07 98 | CG 22 79 07 98 |
| CG 71 06 10 99 | CG 22 94 10 01 | CG 21 86 12 04 | CG 03 00 01 96 |
| CG 70 42 04 03 | IL 00 21 07 02 | CG 21 60 09 98 | CG 70 71 09 99 |
| M  10 85 06 00 | IL 70 27 07 01 | IL 70 39 01 06 | CG 00 01 12 04 |
| CG 02 20 11 06 | CG 21 47 07 98 | M  10 74 01 93 | IL 00 17 11 98 |
| CG 71 03 01 06 | CG 04 37 12 04 | CG 00 67 03 05 | CG 71 34 04 05 |
| CG 20 10 07 04 | | | |

PAGE   1

COMMERCIAL GENERAL LIABILITY
SCHEDULE OF COVERED PREMISES

POLICY NUMBER                                    NAMED INSURED

   GL 2043449000000                        GULF/ARISTEO, JOINT VENTURE

---

PREM NO   BLDG NO   LOCATION
00001       001     2200 CIVIC CENTER PLACE
                    MIRAMAR          FL  33025

   CLASSIFICATION
      CODE        DESCRIPTION
      91580       CONTRACTORS - EXECUTIVE SUPERVISORS OR
                       EXECUTIVE SUPERINTENDENTS - INCLUDING
                       PRODUCTS AND COMPLETED OPERATIONS

| EXPOSURE<br>BASE | PREMIUM<br>BASIS | EXPOSURE |
|---|---|---|
| PAYROLL | PER 1000 | 250,000 |

|  | RATE | PREMIUM |
|---|---|---|
| PREMISES/OPERATIONS | 92.192 | ■■■■■■■ |

   CLASSIFICATION
      CODE        DESCRIPTION
      91585       CONTRACTORS-SUBCONTRACTED WORK-IN
                       CONNECTION WITH CONSTRUCTION,
                       RECONSTRUCTION, REPAIR OR ERECTION
                       OF BUILDINGS  NOC

| EXPOSURE<br>BASE | PREMIUM<br>BASIS | EXPOSURE |
|---|---|---|
| TOTAL COST | PER 1000 | 7,000,000 |

|  | RATE | PREMIUM |
|---|---|---|
| PREMISES/OPERATIONS | 0.992 | ■■■■■■ |
| PROD/COMPLETED OPS | 2.302 | |

   CLASSIFICATION
      CODE        DESCRIPTION
      49950       ADDITIONAL INTERESTS

|  |  | PREMIUM |
|---|---|---|
| PREMISES/OPERATIONS | 0.000 | ■■■■■ |
| SUBLINE 334 MINIMUM PREMIUM | | ■■■■■ |
| SUBLINE 336 MINIMUM PREMIUM | | ■■■■■ |

---

PAGE   2

## COMMERCIAL GENERAL LIABILITY
## SCHEDULE OF COVERED PREMISES

POLICY NUMBER

    GL 2043449000000

NAMED INSURED

    GULF/ARISTEO, JOINT VENTURE

TOTAL COVERAGE PART PREMIUM       $ ▮▮▮▮▮▮▮▮

# QUICK REFERENCE
# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## READ YOUR POLICY CAREFULLY

The Commercial General Liability Coverage Part in your policy consists of Declarations, a Coverage Form (CG 00 01), Common Policy Conditions and Endorsements, if applicable.  Following is a Quick Reference indexing of the principal provisions contained in each of the components making up the Coverage Part, listed in sequential order, except for the provisions in the Declarations which may not be in the sequence shown.

**DECLARATIONS**

Named Insured and Mailing Address
Policy Period
Description of Business and Location of Premises
Limits of Insurance
Forms and Endorsements applying to the Coverage Part at time of issue

**COVERAGE FORM (CG 00 01)**

SECTION I - COVERAGES

Coverage A - Bodily Injury and Property Damage Liability
Insuring Agreement
Exclusions
Coverage B - Personal and Advertising Injury Liability
Insuring Agreement
Exclusions
Coverage C - Medical Payments
Insuring Agreement
Exclusions
Supplementary Payments

SECTION II - WHO IS AN INSURED

SECTION III - LIMITS OF INSURANCE

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

Bankruptcy
Duties in the Event of Occurrence, Claim of Suit
Legal Action Against Us
Other Insurance
Premium Audit
Representations
Separation of Insureds
Transfer of Rights of Recovery Against Others to Us

SECTION V - DEFINITIONS

**COMMON POLICY CONDITIONS (II 00 17)**

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

**ENDORSEMENTS (If Any)**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1984, 1986

M 10 74 01 93

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 © ISO Properties, Inc., 2003 ☐

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2003   CG 00 01 12 04   □

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2003

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

   (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

   (b) the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

 © ISO Properties, Inc., 2003 CG 00 01 12 04 □

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

© ISO Properties, Inc., 2003

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

© ISO Properties, Inc., 2003     CG 00 01 12 04     ☐

### m. Pollution

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

### n. Pollution-Related

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

### o. War

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   © ISO Properties, Inc., 2003     □

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

© ISO Properties, Inc., 2003 CG 00 01 12 04 □

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

© ISO Properties, Inc., 2003

CG 00 01 12 04    ☐

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

  **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

  **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

  **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

  **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

© ISO Properties, Inc., 2003

CG 00 01 12 04 □

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

  (a) Snow removal;

  (b) Road maintenance, but not construction or resurfacing; or

  (c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  a. False arrest, detention or imprisonment;

  b. Malicious prosecution;

  c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

  f. The use of another's advertising idea in your "advertisement"; or

  g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

  a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      (a) When all of the work called for in your contract has been completed.

      (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  b. Does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

© ISO Properties, Inc., 2003   CG 00 01 12 04   □

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2003 □

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Hart Forms & Services
Reorder No. 14-8234

     Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
CG 00 67 03 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

CG 00 67 03 05 © ISO Properties, Inc., 2004 Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 02 20 11 06

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

  **a. For 90 Days Or Less**

    If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

    **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

      **(a)** A material misstatement or misrepresentation; or

      **(b)** A failure to comply with the underwriting requirements established by the insurer.

  **b. For More Than 90 Days**

    If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

    **(1)** Nonpayment of premium;

    **(2)** The policy was obtained by a material misstatement;

    **(3)** Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

    **(4)** A substantial change in the risk covered by the policy; or

    **(5)** The cancellation is for all insureds under such policies for a given class of insureds.

    If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

      **(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      **(b)** 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

**B.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

  **5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect. The cancellation will be effective even if we have not made or offered a refund.

© ISO Properties, Inc., 2006

**C.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

CG 02 20 11 06

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 04 37 12 04

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ELECTRONIC DATA LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### Schedule

| Loss Of Electronic Data Limit: | $ |
|---|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** Exclusion **2.p.** of **Coverage A – Bodily Injury And Property Damage Liability** in **Section I – Coverages** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data" that does not result from physical injury to tangible property.

**B.** The following paragraph is added to **Section III – Limits Of Insurance:**

Subject to **5.** above, the Loss of Electronic Data Limit shown in the Schedule above is the most we will pay under Coverage A for "property damage" because of all loss of "electronic data" arising out of any one "occurrence".

**C.** The following definition is added to the **Definitions** Section:

"Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**D.** For the purposes of the coverage provided by this endorsement, the definition of "Property Damage" in the **Definitions** Section is replaced by the following:

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it; or

**c.** Loss of, loss of use of, damage to, corruption of, inability to access, or inability to properly manipulate "electronic data", resulting from physical injury to tangible property. All such loss of "electronic data" shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

CG 04 37 12 04

© ISO Properties, Inc., 2003

Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 07 98      Copyright, Insurance Services Office, Inc., 1997      Page 1 of 1   ☐

COMMERCIAL GENERAL LIABILITY
CG 21 60 09 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., **Exclusions** of Section I – Coverage A – **Bodily Injury And Property Damage Liability** and Paragraph 2., **Exclusions** of Section I – Coverage B – **Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" (or "personal and advertising injury" if defined as such in your policy) arising directly or indirectly out of:

**a.** Any actual or alleged failure, malfunction or inadequacy of:

**(1)** Any of the following, whether belonging to any insured or to others:

**(a)** Computer hardware, including microprocessors;

**(b)** Computer application software;

**(c)** Computer operating systems and related software;

**(d)** Computer networks;

**(e)** Microprocessors (computer chips) not part of any computer system; or

**(f)** Any other computerized or electronic equipment or components; or

**(2)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph 2.a.(1) of this endorsement

due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

**b.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **2.a.** of this endorsement.

Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
CG 21 70 11 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

                    © ISO Properties, Inc., 2002                    Page 1 of 1       □

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

B. The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

3. A reinforced or unreinforced base coat;

4. A finish coat providing surface texture to which color may be added; and

5. Any flashing, caulking or sealant used with the system for any purpose.

© ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 22 34 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

2. Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

Copyright, Insurance Services Office, Inc., 1997

Page 1 of 1  ▢

COMMERCIAL GENERAL LIABILITY
CG 22 79 07 98

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   **a.** Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   **b.** Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to Paragraph **3.** below, professional services include:

   **a.** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   **b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

Copyright, Insurance Services Office, Inc., 1997

COMMERCIAL GENERAL LIABILITY
CG 22 94 10 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **l.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

© ISO Properties, Inc., 2000

**Page 1 of 1**   □

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ASBESTOS EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

All of the terms, provisions, exclusions, and limitations of the coverage form apply except as specifically stated below.

This insurance does not apply to:

**ASBESTOS**

"Bodily Injury" or  "Personal and Advertising Injury" or "Property Damage" arising out of:

(1)   The removal, replacement, repair, enclosure or encapsulation of asbestos from any building or structure;

(2)   The use, manufacture, transportation, removal, storage or disposal of asbestos or any substance, goods, products or structures containing asbestos; or

(3)   The inhalation, ingestion or absorption of asbestos by any person, including any prolonged or repeated exposure to asbestos.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2002

CG 70 42 04 03

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCESS INSURANCE CONDITION - WHEN YOU ARE AN INSURED ON OTHER INSURANCE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

All of the terms, provisions, exclusions, and limitations of the coverage form apply except as specifically stated below.

Paragraph **4.b.** of the Other Insurance Condition - (Section IV - Commercial General Liability Conditions) is deleted and replaced by the following:

4. **Other Insurance**

   b. **Excess Insurance**

   This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

   (1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for "your work;"

   (2) That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;

   (3) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

   (4) If the loss arises out of the maintenance or use of aircraft, "autos", or watercraft to the extent not subject to Exclusion **g.** of Section I - Coverage **A** - Bodily Injury And Property Damage Liability; or

   (5) That is valid and collectible insurance available to you as an insured under any other policy.

   When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

   When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:

   (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   (2) The total of all deductible and self-insured amounts under all that other insurance.

   We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 1997

CG 70 71 09 99

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION, HOSTILE FIRE EXCEPTION, AND CONTRACTOR JOB SITE EXCEPTION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

All of the terms, provisions, exclusions, and limitations of the coverage form apply except as specifically stated below.

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.   Pollution**

**(1)**   "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

**(a)**   "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(b)**   "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(i)**   At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment or waste; or

**(ii)**   At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(c)**   "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

**(2)**   Any loss, cost or expense arising out of any:

**(a)**   Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)**   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Insurance Services Office, Inc., 2004

CG 71 03 01 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COMMERCIAL
# GENERAL LIABILITY CONDITIONS
# NOTICE AND TENDER TO OTHER INSURERS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

All of the terms, provisions, exclusions, and limitations of the coverage form apply except as specifically stated below.

Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**, the following is added to paragraph **2.c.** of **Duties In The Event Of Occurrence, Offense, Claim Or Suit:**

**(5)**  Promptly give notice of an "occurrence" or offense which may result in a claim, a claim which is made or "suit" to any other insurer which has available insurance for a loss we cover under **Coverages A** or **B** of this coverage part.

**(6)**  Promptly tender the defense of any claim made or "suit" to any other insurer which also has available insurance for a loss which we cover under **Coverage A** or **B** of this coverage part.

**CG 71 06 10 99**          Copyright, Insurance Services Office, Inc., 1998

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BODILY INJURY DEFINITION MODIFICATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**All other terms, provisions, exclusions, and limitations of the policy apply except as specifically stated below.**

**SECTION V - DEFINITIONS**, Item 3. "Bodily injury" is deleted and replaced with the following:

3.    "Bodily injury"

    a.    Means physical:

        **(1)** Injury;
        **(2)** Disability;
        **(3)** Sickness; or
        **(4)** Disease;

        sustained by a person, including death resulting from any of these at any time.

    b.    Includes mental:

        **(5)** Anguish;
        **(6)** Injury;
        **(7)** Humiliation;
        **(8)** Fright; or
        **(9)** Shock;

        sustained by a person who has sustained any "bodily injury" described in paragraph **3.a.**, provided that any "bodily injury" described in paragraph **3.b.** results directly from any "bodily injury" described in paragraph **3.a.**

    c.    All "bodily injury" described in paragraph **3.b.** shall be deemed to have occurred at the time the "bodily injury" described in paragraph **3.a.** occurred.

CG 71 34 04 05

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

© ISO Properties, Inc., 2001

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001     □

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PRIVACY PROTECTION CONDITION

This endorsement modifies the following:

## COMMON POLICY CONDITIONS

The **COMMON POLICY CONDITIONS** is modified to include the following additional Condition:

**Privacy Protection**

a.    This policy provides that you will report claims to us as soon as practicable and will cooperate with us in the investigation and settlement of claims.  To enable you to assist us in the claim handling process we, or our independent agent, may share certain information with you.  This information may be Confidential Information. Confidential Information means non-public personal information.  This information will be shared solely for the purpose of helping to effect, administer or enforce rights and benefits payable or recoverable under this policy.

b.    You agree to use such Confidential Information solely to perform the services and obligations required under this policy.  You will not use Confidential Information for any other purpose.  You will use information shared to:

   (1)    work with us to develop settlement or litigation strategies on your behalf.

   (2)    detect and investigate any suspected fraud.

   (3)    support our safety, loss prevention, and case management programs.  Case management includes utilization review, disability management, return to work, and light duty programs.

   (4)    check your premium charges and billings for accuracy.

   (5)    monitor our claim handling practices for quality assurance, quality improvement and performance evaluation purposes.

   (6)    report to us any information that may contribute to the fair and final resolution of all claims.

   You specifically agree not to use any Confidential Information to market your products or services.  You will also not use Confidential Information to make personnel or employment related decisions.

c.    You agree to protect the privacy of Confidential Information.  You will not share Confidential Information, either directly or indirectly with any third party, except as may be allowed by law.  You will share Confidential Information only with your employees who have a need for such information to perform their duties under this policy.  If you need to disclose any Confidential Information to a third party in order to perform your duties under this policy, you will first get our written consent.  You will then enter into a confidentiality agreement with such third party.  Under that confidentiality agreement such third party must be restricted from disclosing, using or copying Confidential Information, except as consistent with this policy.

Nothing in this endorsement shall affect the coverage provided by this policy.  Provided, however, if permitted by law, we may cancel your policy in the event you use or disclose Confidential Information other than as provided in this endorsement or permitted by law.

**IL 70 27 07 01**

**POLICYHOLDER DISCLOSURE**
**NOTICE OF TERRORISM**
**INSURANCE COVERAGE**

Coverage for acts of terrorism is already included in your current policy.   Under your existing coverage, any losses resulting from certified acts of terrorism would be partially reimbursed by the United States government under a formula established by the Terrorism Risk Insurance Act, as extended on December 22, 2005.

Under this formula, the United States government generally pays 90% (85% in 2007) of covered terrorism losses exceeding the statutorily established deductible paid by Amerisure.

Amerisure does not charge additional premium for this coverage.   Furthermore, your annual premium does not include any charges for the portion of losses covered by the United States government under the Act.

Name of Insurer: _____

Policy Number: _____

IL 70 39 01 06

COMMERCIAL GENERAL LIABILITY

# 2005 GENERAL LIABILITY
# FORMS REVISION
# ADVISORY NOTICE TO POLICYHOLDERS

This is a summary of the major changes to your policy.  No coverage is provided by this summary nor can it be construed to replace any provisions of your policy or endorsements.  You should read your policy and review your declaration page for complete information on the coverages you are provided. If there is any conflict between the policy and this summary, **THE PROVISIONS OF THIS POLICY SHALL PREVAIL.**

The areas within the policy that broaden, reduce or clarify coverage are highlighted below. This notice does not reference every editorial change made in your policy.

---

## COVERAGE FORM CHANGES

---

### *BROADENINGS IN COVERAGE*

#### POLLUTION EXCLUSION:

- CG 71 03 01 06 - Total Pollution Exclusion With a Building Heating Equipment Exception, Hostile Fire Exception and Contractor Job Site Exception  (revision of CG 71 03 03 04)
- CG 71 30 01 06 - Total Pollution Exception With A Building Heating Equipment Exception, Hostile Fire Exception and Contractor Job Site Exception  (revision of CG 71 30 03 04)

The exception to the Pollution Exclusion which provides coverage for bodily injury arising out of smoke, fumes, vapors or soot from building heating equipment has been expanded to also include water heaters and cooling and dehumidifying equipment.

### *CLARIFICATIONS OR NO IMPACT IN COVERAGE*

#### ELECTRONIC DATA:

- CG 70 70 09 05 - Advantage General Liability Extension (revision of CG 70 70 01 04)
- CG 70 49 09 05 - Contractors General Liability Extension (revision of CG 70 49 03 04)
- CG 70 88 10 05 - Texas Advantage General Liability Extension (revision of CG 70 88 01 04)
- CG 70 63 10 05 - Texas Contractors General Liability Extension (revision of CG 70 63 03 0

A minor clarification change was made on the form.

Includes copyrighted material of Insurance Services Office, Inc.,
with its permission. Insurance Services Office, Inc. 2004

AN 12 20 04 06

Page 1 of 2

57 of 65

## REDUCTIONS IN COVERAGE

### REVISED MOBILE EQUIPMENT

- CG 70 70 09 05 – Advantage General Liability Extension (revision of CG 70 70 01 04)
- CG 70 49 09 05 – Contractors General Liability Extension  (revision of CG 70 49 03 04)
- CG 70 88 10 05 – Texas Advantage General Liability Extension (revision of CG 70 88 01 04)
- CG 70 63 10 05 – Texas Contractors General Liability Extension  (revision of CG 70 63 03 04)

The definitions of "mobile equipment" and "auto" have been revised. Any land vehicle that had been classified as a piece of mobile equipment under your previous policy, will now be considered an auto if that vehicle is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. With this change, coverage is no longer provided for these types of land vehicles since they are now defined to be autos rather than mobile equipment and subject to the Aircraft, Auto and Water-craft exclusion in your policy. However, the operation of machinery or equipment that is attached to, or part of, such a vehicle will still be covered by your policy.

If you wish to obtain coverage for land vehicles subject to compulsory or financial responsibility laws or other motor vehicle insurance laws, you should consider a Commercial Automobile policy.

### OTHER INSURANCE

- CG 70 14 08 05 – Manufacturers Processors Specifications Expense Coverage  (revision of CG 70 14 04 02) Except Alabama and Texas (CG 70 14 04 98)
- CG 70 15 08 05 – Product Recall Coverage Endorsement  (revision of CG 70 15 04 02)
- CG 70 30 08 05 – Repair and Rework Coverage: Expense Indemnification for Repair of Your Product or Your Work Endorsement  (revision of CG 70 30 04 02)
- CG 70 45 08 05 – Texas Repair and Rework Coverage: Expense Indemnification for Repair of Your Product or Your Work Endorsement  (revision of CG 70 45 01 04)
- CG 70 76 08 05 – Kansas Product Recall Coverage  (revision of CG 70 76 01 04)
- CG 70 77 08 05 – Tennessee Repair and Rework Coverage: Expense Indemnification for Repair of Your Product or Your Work Endorsement  (revision of CG 70 77 01 04)
- CG 71 05 08 05 – Mississippi Repair and Rework Coverage: Expense Indemnification for Repair of Your Product or Your Work Endorsement  (revision of CG 71 05 01 04)
- CG 71 27 08 05 – Alabama Repair and Rework Coverage: Expense Indemnification for Repair of Your Product or Your Work Endorsement  (revision of CG 70 27 01 04)

The above changes were made for clarification and to remove any ambiguities in the coverage forms.

Includes copyrighted material of Insurance Services Office, Inc., with its permission. Insurance Services Office, Inc., 2004

AN 12 20 04 06

POLICY NUMBER: GL 2043449

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 07 04**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| CITY OF MIRAMAR<br>2300 CIVIC CENTER PLACE<br>MIRAMAR, FL  33025 | 220 CIVIC CENTER PLACE<br>MIRAMAR, FL  33025 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

CG 20 10 07 04

Copyright, ISO Properties, Inc., 2004

**Page 1 of 1**
**UNIFORM**

POLICY NUMBER: GL 2043449

COMMERCIAL GENERAL LIABILITY
CG 20 10 07 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| BROWARD COUNTY BOARD OF COMMISSIONERS; RISK MGMT. 115 SOUTH ANDREWS AVENUE, ROOM 210 FT. LAUDERDALE, FL 33301 | 220 CIVIC CENTER PLACE MIRAMAR, FL 33025 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

   **1.** Your acts or omissions; or

   **2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

   **1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

   **2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

CG 20 10 07 04

Copyright, ISO Properties, Inc., 2004

Page 1 of 1
UNIFORM

POLICY NUMBER: GL 2043449

COMMERCIAL GENERAL LIABILITY
CG 03 00 01 96

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Amount and Basis of Deductible | |
| --- | --- | --- |
| | PER CLAIM or | PER OCCURRENCE |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ | $1,000 |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

**1. PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

  **a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

  **b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

  **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

    (1) "Bodily injury";

    (2) "Property damage"; or

    (3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

Copyright, Insurance Services Office, Inc., 1994 ☐

**2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

  **a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

  **b.** Under Property Damage Liability Coverage, to all damages because of "property damage"; or

  **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

    **(1)** "Bodily injury";

    **(2)** "Property damage"; or

    **(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C.** The terms of this insurance, including those with respect to:

  **1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

  **2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

CG 03 00 01 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICY CHANGES

Policy Change Number  1

| POLICY NUMBER<br>GL 2043449000000 | POLICY CHANGES EFFECTIVE<br>9-30-2007 | COMPANY<br>AMERISURE MUTUAL INSURANCE |
|---|---|---|

| | |
|---|---|
| Direct Bill No: | POLICY PERIOD |
| Account No: 20028665 | From 3-1-2007          To 3-1-2008 |
| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
| GULF/ARISTEO, JOINT VENTURE<br>C/O GULF BUILDING CORPORATION<br>600 CORPORATE CENTER DRIVE<br>FT. LAUDERDALE, FL 33334 | BATEMAN GORDON & SANDS, INC.<br>POMPANO BEACH, FL<br><br>PRODUCER CODE: 826368-150 |

COVERAGE PARTS AFFECTED

ENTIRE

CHANGES

MAILING ADDRESS IS CHANGED TO:

633 S. FEDERAL HIGHWAY
SUITE 500
FT. LAUDERDALE, FL 33301

Authorized Representative Signature

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

A-3188 (12-88)

# AMERISURE MUTUAL INSURANCE COMPANY

26777 Halsted Road, Farmington Hills, MI 48331-3586
Phone 1-800-257-1900

## ASSIGNMENT

Assignment of this policy is valid only with the written consent of this Company.

## POLICY CONTENT

This policy is made and accepted subject to the foregoing provisions and stipulations and those which follow. These provisions, in addition to those added by amendment or endorsement are a part of this policy.

This policy consists of the Common Policy Declarations, Coverage Parts and endorsements listed in that Declarations form. In return for the payment of the premium, the Company agrees with the Named Insured to provide the insurance afforded by a Coverage Part forming part of this policy.

## MUTUAL POLICY CONDITIONS

This policy is non-assessable. You are a member of the Company. Members participate in the distribution of dividends to the extent and upon the conditions fixed and determined by the Board of Directors. Such distribution will be made in accordance with the law.

**IN WITNESS WHEREOF,** the Company has executed and attested to these provisions. This policy is not valid unless countersigned on the Declarations page by our authorized representative.

The insured is notified that by virtue of this policy, he/she is a member of the Amerisure Mutual Insurance Company of Farmington Hills, Michigan. Members are entitled to vote either in person or by proxy at Company meetings. Annual meetings are held on the second Thursday of May of each year at 10:30 A.M. at the Home Office in Farmington Hills, MI or at such other place in the City of Farmington Hills, to which the members may adjourn such meeting.

Secretary

President

M 10 85 06 00

GENERAL LIABILITY

INSURING COMPANY                    POLICY NUMBER      GL 2043449000000

AMERISURE MUTUAL

NAMED INSURED                       PRODUCER 826368
GULF/ARISTEO, JOINT VENTURE         BATEMAN GORDON & SANDS INC
C/O GULF BUILDING CORPORATION       P O BOX 1270
600 CORPORATE CENTER DRIVE          POMPANO BEACH      FL   33061
FT. LAUDERDALE      FL   33334
TERM EFF DATE    03/01/2007         TERM EXP DATE      03/01/2008

| FORM NUMBER | FORM NAME | FILL IN (R/O/N) |
|---|---|---|
| AN 12 20 04 06 | ADVISORY NOTICE TO POLICYHOLDERS (05) | N |
| CG 21 70 11 02 | CAP ON LOSS/CERT ACT OF TERRORISM | N |
| CG 22 34 07 98 | EXCL-CONSTRUCTION MANAGEMENT E & O | N |
| CG 22 79 07 98 | EXCL-CONTRACTORS-PROF. LIABILITY | N |
| CG 71 06 10 99 | NOTICE AND TENDER | N |
| CG 22 94 10 01 | EXCL-DMG TO WORK PERF BY SUBCONTRACTOR | N |
| CG 21 86 12 04 | EXCL - EXTERIOR INSULATION/FINISH | N |
| CG 03 00 01 96 | DEDUCTIBLE LIABILITY INS. | R |
| CG 70 42 04 03 | ASBESTOS EXCLUSION ENDORSEMENT | N |
| IL 00 21 07 02 | NUCLEAR ENERGY LIAB EXCL (BROAD FORM) | N |
| CG 21 60 09 98 | EXCL YEAR 2000 COMPUTER RELATED | N |
| CG 70 71 09 99 | EXCESS INSURANCE CONDITION | N |
| M 10 85 06 00 | AMERISURE MUTUAL JACKET ENDT | N |
| IL 70 27 07 01 | PRIVACY PROTECTION CONDITION | N |
| IL 70 39 01 06 | POLICYHOLDER DISCLOSURE NOTICE/TERRORISM | N |
| CG 00 01 12 04 | COMM'L. GEN'L LIABILITY COVERAGE FORM | N |
| CG 02 20 11 06 | FLORIDA CHANGES-CANCELLATION/NONRENEWAL | N |
| CG 21 47 07 98 | EMPLOYMENT RELATED PRACTICES EXCL. | N |
| M 10 74 01 93 | CGL QUICK REFERENCE | N |
| IL 00 17 11 98 | COMMON POLICY CONDITIONS | N |
| CG 71 03 01 06 | TOTAL POLLUTION EXCLUSION | N |
| CG 04 37 12 04 | ELECTRONIC DATA LIABILITY | O |
| CG 00 67 03 05 | EXCL-VIOLAION OF STATUES EMAIL/FAX/PHONE | N |
| CG 71 34 04 05 | BODILY INJURY DEFINITION MOD | N |
| CG 20 10 07 04 | ADD'L INS-OWNERS/LESSEES/CONT (B) | O |



21 N
2 T
2 B
25

NOTED

MAR 2 6 2007

N. Puskas